Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Edward Ridgill. I'd like to try to reserve about three minutes of my time for rebuttal. Dr. Ridgill challenges his conviction and sentence for distribution of controlled substances. He challenges improper expert testimony and jury instructions, which permitted the jury to convict him without the requisite intent. He also challenges the district court error in sentencing, which increased the sentencing guideline range from eight months. The first issue I'd like to turn to is Instruction 16. Dr. Ridgill contends that this instruction improperly stated the law and allowed the jury to convict him without the requisite intent. This court held in Feingold that with respect to intent, the government must prove that the defendant intentionally distributed controlled substances outside the usual course of professional practice and that the defendant intentionally distributed controlled substances for no legitimate medical purpose. The government must prove both intents. A defendant may avoid conviction by proving the absence of either intent. In other words, it's not enough to show that the defendant did not comply with the standards of practice or that he prescribed substances for no legitimate medical purpose. The government must prove that he had the intent to do so. And here, the instructions impermissibly lowered the guideline, suggesting that only one intent was required, the intent to distribute outside the usual course of professional practice. According to the instruction given to the jury, the intent element was that the defendant acted with the intent to distribute the identified controlled substance outside the usual course of professional practice and without legitimate medical purpose. And so, as discussed in the opening brief, this instruction was unclear because it was not specified what the phrase, without legitimate medical purpose, modified. And that was charged over the defendant's exception? Yes, it was. In fact, the defense actually stated that the jury had defined intent to act with no legitimate medical purpose and the government's instruction did not explain that. That was at ER 748, so the defense did object to it. And the government's answering brief, in fact, it tells us that this instruction was defective. The government agrees in its answering brief that the government must prove beyond a reasonable doubt that the defendant intentionally prescribed or distributed the controlled substance for other than a legitimate medical purpose. The government answering brief further admits the jury was required to find that the defendant intended to distribute the drugs without legitimate purpose. Were you at the trial counsel below? I was not, Your Honor. Do you know if trial counsel in the record argued the intent as to going beyond a medical purpose? I think they did, Your Honor. I'm not positive. So, at closing, defense counsel presumably focused on this, given that he is a licensed doctor, that that would be at the centerpiece of the defense argument. I think it was, but I'm not sure that they – I don't recall at this point whether they specified that that instruction was in error. They did during the course of jury instructions, obviously, because I just cited where they objected to it. But I wanted to – if I address the Court's concern, I wanted to point to the answering brief states that the instruction – But the reason I ask that is because you're saying that this is potentially confusing and I imagine that that was cleared up by the way the parties argued the case. I don't think that it was, Your Honor. In the government's answering brief, the government argues that the instruction is proper because it required the jury to find that the defendant acted with intent to distribute both outside the course of professional practice and without legitimate purpose. In other words, the government adds a word both to the instruction in order to justify it. And the fact that the government has to add that word to justify the instruction tells us that the instruction is inadequate. Therefore, the jury was not instructed on the requisite intent. Now, Dr. Ridgell also contends that the district court erred in including the cures data in determining his sentencing guideline range. The PSR held him accountable for only the prescriptions written to the two CSs who were the subject of the indictment. That generated a sentencing guideline range of 18 to 24 months. And we contend in the opening brief that the government was – since the enhancement, addition of the cures data caused the offense level to skyrocket to 28 and increase the guidelines range to 87 to 108 months, that this finding should have been made by clear and convincing evidence. The defense contends that, in fact, the addition of the cures data was unwarranted because the government did not prove that that data showed that Dr. Ridgell had – that the prescriptions were inadequate. The government did not do any sort of survey of the cures data. All the government did was take 10 individuals the government knew were gang members and knew had acted illegally and analyze those. And the government presented the testimony of its expert, Dr. Munzing, whose testimony was biased. And also Dr. Munzing, when he looked at these, assumed in every case that Dr. Ridgell had not done the exam that he said he had done and had not made the necessary test that he had done just because Dr. Munzing found that with respect to the two C.S.s. who were the subject of the indictment, he improperly and erroneously found that Dr. Ridgell had acted improperly in those cases. There are two – there are several instances discussed in the opening brief where Dr. Ridgell made tests and Dr. Munzing said that, based upon evidence that Dr. Munzing didn't – was – in fact, was not available to Dr. Munzing, claimed that Dr. Ridgell had not done tests that Dr. Ridgell claimed to have done. One of them was the pedal pauses test, which Dr. Munzing, looking at the record and the recording, said was not done. But, in fact, that test had been done at an earlier visit, which was not recorded. Dr. Munzing also claimed that Dr. Ridgell had not done – tested a snuff box. But, in fact, Dr. Munzing then later admitted on cross-examination that he couldn't see from the angle of the videotape whether or not Dr. Ridgell had actually done that exam. So the point that the defense made was that Dr. Munzing was biased. He made conclusions based upon evidence that was not available to him, and on cross-examination admitted he could not tell from the record, and therefore his conclusions were invalid. Therefore, the district court, by clear and convincing evidence, could not have found that all the cures data should have been admitted into the sentencing context. And unless there are any further questions on that, I'll reserve the remainder of my time for rebuttal. All right.  Good morning, Your Honors. May it please the Court. My name is Catherine Onn, and I am here on behalf of the United States. I'd like to address the two issues raised by defense in their argument. The first was Jury Instruction 16, which dealt with the jury instructions for the elements of the offense. Focusing on this instruction, when viewed as a whole, the elements of the offense clearly convey that the jury had to find three elements. First, that defendant knowingly distributed controlled substances. Second, that he did so outside of the usual course of professional practice and without legitimate medical purpose. And third, that he intentionally did so outside of the usual course of professional practice and without legitimate medical purpose. The inclusion of the and makes it clear that both are required, not only for the third element, but for the second as well. Defense notably did not object, either at trial or raise it in their appeal, that the second element was somehow lacking. Yet the format of the third element directly tracks the second, and both the second and the third element require these dual findings. When looking at the elements as a whole, they clearly and adequately convey what the jury must have found. Furthermore, addressing Your Honor's question regarding the argument in closing, the defendant did argue this in closing. In fact, the defendant argued repeatedly in closing that the jury should not convict Dr. Ridgill, the defendant, because he was simply potentially a bad doctor or a negligent doctor, but not a criminal one. This was repeatedly argued at closing in an attempt to paint the doctor as simply a negligent doctor, as opposed to a doctor whose practice was permeated by criminality. Regarding the sentencing argument, regarding clear and convincing, I wanted to flag that the standard of review here is whether or not the evidence is clear. Here, based upon the prior precedence of this court and the overwhelming evidence presented showing the reliability of the curious data and the analysis of the curious data, no plain error. Let's talk about the standard. If we find that the court should have applied the clear and convincing standard, do we need to remand it? The government would argue, and I would argue, no, because of the overwhelming state of the heart of the government's experts' testimony. The heart of what Dr. Mungeon testified to is that each patient should receive individualized care. Individualized care as shown through an adequate medical history, adequate physical exam, discussion of treatment and a treatment plan, consideration of side effects that these very dangerous drugs could have, review of prior drug or alcohol addiction or concerns with appropriate follow-up to include verification of the patient's history. The defendant didn't just fail to do some of these things. He didn't do any of them. He ignored red flags, references to drug abuse, references, made jokes about selling drugs on the street, ignored the two CS's repeated requests to separate the prescriptions, which is an indication of resale, repeated requests to boost numbers of Norco, repeated requests for Cizerp, which is not a legitimate drug. The defendant immediately recognized it as a drug for a street sale. He ignored all of these things in order to repeatedly prescribe high volumes of maximum strength Norco in combination with Soma and Xanax. And that is exactly the same pattern of distribution found throughout the Cures data, 95%, nearly 95% of the Cures data with just those three drugs, most of the time at their maximum strengths. And this is striking. What does the Cures data show beyond just the name and the date of birth and the name of the drugs? Also the address. So this is the address. And the patient's address. Yes, the address at the time the patient got the prescription filled. And this was another indicator relied upon by the district court at sentencing, which at some of these patients traveled over 100 miles to see the defendant. And that same types of factors, the pre-written prescriptions, the length of distance traveled has been relied upon in other circuits, albeit unpublished decisions, as factors indicating that the practice was permeated by criminality, which the district court found in this case at sentencing. Regarding the patient files, the district court actually pointed to the fact that 10 of Dr. Gil's patients, 10 of the defendant's patients, knew that they could go to the defendant to seek drugs. Those were the 10 patients who were East Coast Crips gang members. They repeatedly went to the defendant for a period much longer than the Cures data, from 2012 through to 2015, to get these high volumes of maximum strength Norco along with the benzodiazepine and Soma. And that's an indicator that they knew they could go to the defendant to obtain these drugs, indicating in favor of the fact that Dr. Gil's practice was, in fact, permeated by criminality. One of the factors that Dr. Munzing testified to was the fact that even when he was seeing Ms. Davis for her second follow-up visit, he pre-wrote the prescriptions before she even entered the room, which is an indicator that no matter what was going to happen at that visit, he was going to give her the same drugs. That in and of itself is a testament to the fact that his exam table was, in fact, not an examination table, but simply a writing table. So, Counsel, one of the arguments your office has made in other cases, I don't think I saw it in this one, was that after some recent Supreme Court decisions, like a case called Beckles, that the clear and convincing standard no longer exists anymore. The theory being that the guidelines are advisory, so why do we need to find certain things by a certain standard of evidence if it's all advisory anyway? I don't, I didn't see that argument being made in your brief in this case. I take it you're not making that case here. That, you're correct. That is not an argument that we made in our answering brief. I am aware that the government, and my office in particular, has taken that position in other cases. I don't feel authorized at this point to state whether or not we've backed off from that position. I do know we continue to argue that position in other briefs. But not, but not today? Not today, Your Honor. Okay, thank you. Under, and I would argue that even if this court applied a clear and convincing standard, the evidence was so overwhelming, it would suffice even under that standard, and there was no clear plain error here. And with that, unless the court has any additional questions, we would respectfully urge this court to affirm defendant's convictions. The district court remand to clarify the conditions of supervision discussed in our 28-J letter, and we rest in the arguments in our brief. Thank you. Thank you. Thank you. I just want to briefly respond to some of Ms. Zahn's comments. One of the things she argued that the defense counsel did argue during oral argument, or closing argument to the jury, that Mr. Ridgell, Dr. Ridgell was negligent. And that's accurate. They did make that argument, but the point is the jury has to view that argument in the lens of an instruction that doesn't tell them they have to find two intents. The government also argued that the plain error standard should apply, but the application of an incorrect standard of proof to an enhancement with disproportionate impact was plain error this court held in Jordan. Now the government also said that Dr. Ridgell, one of the things they complained about Dr. Ridgell was the fact that he joked about selling drugs on the street. And I wanted to turn to that for a minute because in that instance, Dr. Ridgell was doing exactly what Dr. Munzing says he's supposed to do, and the government takes it out of context and criticizes him for it. In that context, Dr. Ridgell was discussing with his pain management agreement that Dr. Ridgell requires of his patients. They have to agree they won't go to another doctor to get medications while Dr. Ridgell is treating them. They have to agree they won't sell their meds or trade their meds. They have to state that they're not an addict and that no one in their family has told them that they're abusing meds. That's the agreement he requires his patients to sign. He's going over that agreement with Mr. Jones, and he says, you're not selling drugs on the street, right, to Mr. Jones. And Mr. Jones says, no, I really need the meds, I'm in pain. And Dr. Ridgell jokingly says, okay, I guess you're not selling them, you're actually buying them on the street. Now it's an inept effort at a joke, but it's in the context of trying to do exactly the standard of care that Dr. Munzing advocated, trying to make sure that his patients are not getting any extra meds, that they're not selling their meds, and that they're using them for an appropriate purpose. Unless the Court has any further questions, I'll ask the Court to reverse Dr. Ridgell's conviction and sentence. Thank you.
judges: Nguyen, Owens, Vitaliano